# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANK M. SULLIVAN, III, p/k/a SURVIVOR, and JAMES PETERIK | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 14 CV 731 |
| v. | )<br>) Judge Robert M. Dow, Jr. |
| SONY MUSIC ENTERTAINMENT, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Sony Music Entertainment's ("Defendant" or "SME's") motion to dismiss and for partial summary judgment [18]. Plaintiffs bring this two-count breach of contract and declaratory judgment action in connection with royalty provisions in a recording agreement. Because Plaintiffs have failed to establish that there is personal jurisdiction over Defendant, the motion to dismiss is granted.

**I.   Factual Background[1]**

Plaintiffs are the founding members of the musical band Survivor. In 1978, the band entered into a recording agreement ("Agreement") with Scotti Brothers Records, Inc., (Defendant's predecessor-in-interest), pursuant to which the band recorded various songs, termed the "Survivor Masters." Under the Agreement, Defendant has the right to manufacture, distribute, sell, and license the Survivor Masters, and in exchange, Defendant is required to pay Survivor certain royalty rates, which depend on Defendant's particular use of a recording.

---

[1] Unless indicated otherwise, the facts set forth below are drawn from Plaintiffs' complaint.

For Defendant's "sale of LP[ ] [records], singles, and prerecorded tapes," the royalty rate to be paid to Survivor is five to ten percent of the suggested retail price. Compl. ¶ 13. The royalty as to Survivor Masters "licensed by [Defendant] 'for all other types of use (other than phonograph record use) on a flat-fee or royalty basis shall be an amount equal to fifty percent (50%) of the net flat fee or net royalty, as the case may be' received by or credited to [Defendant]." *Id.* At issue is whether licenses for digital music downloads, digital music streaming, and video streaming are for "other types of use," and thus subject to the higher, fifty percent royalty rate.

Plaintiffs contend that licensing to third-party music download providers, such as iTunes and amazon.com (which then distribute permanent music downloads and ringtones to consumers) obligates Defendant to pay the fifty percent royalty rate. According to Plaintiffs, Defendant breached the Agreement by mischaracterizing its licenses to download providers as mere sales, which garner only five to ten percent royalty rates. Defendant counters that digital music downloads qualify as "phonograph records" under the Agreement. See Def.'s Memo. 14. As a phonograph record use, Defendant explains, digital downloads are excluded from the category of uses that qualifies for the higher royalty rate. See *id.*

Plaintiffs also contend that Defendant breached the Agreement by failing to pay royalties for proceeds that Defendant earned from lawsuits arising from certain entities' (such as Napster's) unauthorized download, distribution, and use of the Survivor Masters. Compl. ¶ 18. Finally, Plaintiffs contend that Defendant "improperly charged and deducted from royalties * * * certain promotion and marketing costs and expenses * * * [that] are not properly chargeable to Survivor under the Agreement." *Id.* at ¶ 19.

In Count One, Plaintiffs seek damages for the foregoing breaches of the Agreement, as well as the attorneys' fees that they incur in connection with the lawsuit, as provided in the Agreement. Count Two seeks a declaratory judgment stating that Defendant is obligated to pay royalties equal to fifty percent of the net proceeds received by Defendant that derive from the use of Survivor Masters by providers of digital music downloads, digital music streaming, and video streaming. *Id.* at ¶ 21.

## II.    Analysis

Defendant provides three bases for dismissing the complaint or otherwise entering judgment in its favor: (1) the Court lacks personal jurisdiction over Defendant (a Delaware General Partnership with its principal place of business in New York) under Federal Rule of Civil Procedure 12(b)(2); (2) the complaint fails to state valid breach of contract claims under Rule 12(b)(6); and (3) summary judgment should be granted on the breach of contract claims relating to third-party settlement proceeds and the deduction of marking costs from royalty payments. Because it appears that personal jurisdiction is lacking, the Court does not address the merits of Plaintiffs' claims and instead dismisses the complaint for lack of jurisdiction.

### A.    Personal Jurisdiction Generally

When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* showing of jurisdiction. See *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions (as is the case here), a court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in favor of jurisdiction. See *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). The Seventh Circuit has cautioned

however, that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783.

When subject matter jurisdiction is based on diversity of citizenship (as is the case here) the court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. See *Hyatt Int'l*, 302 F.3d at 713. Accordingly, the district court looks to the Illinois long-arm statute, which contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. See 735 ILCS 5/2-209(c); see also *Hyatt Int'l,* 302 F.3d at 714. The Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l*, 302 F.3d at 715. Accordingly, the relevant question is whether exercising personal jurisdiction over Defendant comports with federal due process protections.

Under the Due Process Clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). The "purposeful availment" standard ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. See *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985).

There are two types of personal jurisdiction: general and specific. See *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16 (1984); see also *Hyatt Int'l*, 302 F.3d at 713. Earlier this year, the Supreme Court held that general jurisdiction requires "'affiliations with the State [that] are so 'continuous and systematic' as to render [the Defendant] essentially at home in the forum State,'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. Specific jurisdiction, on the other hand, is more limited and exists for controversies that "arise out of" or "relate to" a defendant's forum contacts. *Id.* Plaintiffs contend that the Court has both general and specific jurisdiction over Defendant. The Court addresses both jurisdictional theories below.

### B. General Jurisdiction

Defendant argues that the Court lacks general jurisdiction as it is a Delaware general partnership with its principal place of business in New York. See Def.'s Memo. 9. Defendant maintains that it has no offices or facilities of any sort in Illinois, and that it is not qualified to do business in Illinois. *Id.* Defendant has submitted a declaration from one of its vice presidents in support of these contentions. See Jacoby Decl. Plaintiffs argue in response that Defendant is subject to general jurisdiction by virtue of the Court's jurisdiction over one of the general partners of the SME partnership—Sony Music Holdings, Inc. ("SMHI"). See Pls.' Resp. 5 (explaining that Defendant is a general partnership, 98 percent of which is owned by SMHI). Plaintiffs contend that because there is general personal jurisdiction over SMHI, there also is jurisdiction over "the remainder of the partnership." See *id.* at 5–6.

Courts have observed that the actions of one partner (here SMHI) may be sufficient to submit all the partners and a partnership (here Defendant SME) to a court's jurisdiction. See, e.g., *Capital Funding Hotel Group, Ltd., v. Regis Associates*, 1992 WL 296376, *4, n. 4 (N.D. Ill. Oct. 14, 1992). According to the First Circuit, this inquiry turns on consideration of several factors: the relationship between the association and its constituency; the degree of control exercised by the former over the latter; and the extent to which the constituency acts for and on behalf of the association. *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 468 (1st Cir. 1990). These factors all inform the overarching question of whether a partnership, in spite of its absence in a forum state, purposely availed itself of the forum state's benefits through the activities of its partner in the forum state. See *id.*

The threshold question, however, is whether SMHI is subject to general personal jurisdiction in Illinois—an issue that the parties dispute. Plaintiffs contend that there is general jurisdiction over SMHI because it is registered to do business in Illinois, maintains a registered agent for service of process in the state, and operates a facility in Bolingbrook, Illinois that distributes music and videogames. See Pls.' Resp. 6. Defendant contests that such contacts are sufficient to confer general jurisdiction over SMHI and offers a declaration from an executive vice president of Sony Corporation of American that states that SMHI is a Delaware Corporation with its principal place of business in New York, New York. Khalil Decl. ¶ 7. The declaration further establishes that SMHI's executives are based in New York and that SMHI has several hundred employees in California, New York, and Tennessee, but none in Illinois currently. *Id.* at ¶¶ 8, 10–11. SMHI is registered to do business in Illinois as "Sony DADC Americas" as part of its distribution of products that are manufactured by Sony DADC US, Inc., a Delaware corporation with its principal place of business in Terre Haute, Indiana. *Id.* at ¶¶ 3, 13.

Based on the foregoing arguments and evidence, Plaintiffs have failed to carry their burden of establishing that SMHI is subject to general jurisdiction in Illinois. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG*, 134 S. Ct. at 760. Consistent with that principle, the Supreme Court recently rejected the argument that general jurisdiction exists in every state "in which a corporation engages in a substantial, continuous, and systematic course of business," and reaffirmed that the state of incorporation and the principal place of business are the "exemplar bases" for the exercise of general jurisdiction. See *id.* at 760–61 (internal quotations omitted). Here, Plaintiffs' asserted basis for general jurisdiction falls short of demonstrating that SMHI's "affiliations with the State are so 'continuous and systematic' as to render [SMHI] essentially at home in the forum State,'" *Daimler AG*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2851). Moreover, Defendant has submitted affirmative evidence that establishes that, while SMHI does business in Illinois, it is not "at home" in Illinois, particularly in light of its significantly stronger affiliations with other states. See *id.* at 762, n. 20 (explaining that general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" as "[a] corporation that operates in many places can scarcely be deemed at home in all of them.").

Moreover, even if SMHI were subject to general jurisdiction in Illinois, Plaintiffs have failed to establish that such jurisdiction should be attributed to Defendant. There are no allegations that Defendant, for example, exercised influence over SMHI's decision to carry on the in-forum activities that purportedly confer personal jurisdiction over SMHI. Defendant submitted evidence establishing that SMHI's distribution activities in Illinois are unrelated to Defendant's business. For example, the declaration of an Executive Vice President of Sony

Corporation of America states that "SMHI leases the Bolingbrook facility *solely* as part of the distribution operations of Sony DADC US" and that "SMHI does not lease the Bolingbrook facility in connections with any of its own operations, on behalf of SME, or in its capacity as a general partner in [SME]." Khalil Decl. ¶ 15 (emphasis added). Nor does the Bolingbrook facility manufacture or distribute products for SME. *Id.* at ¶ 18. As the First Circuit explained: "Absent a showing that the association had substantial influence over the member's decision to conduct activities in the forum * * * ascribing the member's contacts to the association would be tantamount to haling the association into the forum solely as a result of attenuated third-party contacts or activities for which the association was not responsible." *Donatelli*, 893 F.2d at 469. Accordingly, the Court cannot impute .SMHI's activities in Illinois to Defendant for purposes of establishing general jurisdiction.

Apart from SMHI's activities in Illinois, Plaintiffs only identify the following affiliations between Defendant and the state of Illinois: that some of SME's artists are "local to the Chicago area"; that Defendant is seeking to expand its "stable of Chicago artists," (and hopes to hire a college marketing representative to help it do so); and that Defendant maintains websites through which Illinois consumers can download songs or purchases CDs recorded by Defendant's artists. Pls.' Resp. 7. These contacts do not establish a *prima facie* showing that Defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State,'" *Daimler AG*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2851), particularly in light of Defendant's evidence that it "is not even qualified to do business in Illinois," Def.'s Memo. 9 (citing Jacoby Decl. ¶ 5).

In sum, there is no basis to assert general jurisdiction over Defendant, either by virtue of Defendant's contacts with Illinois, or alternatively, on account of its association with SMHI.

## C. Specific Jurisdiction

Specific jurisdiction requires that a lawsuit arise out of or be related to a defendant's minimum contacts with the forum state. See *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). "The defendant's contacts must not be merely random, fortuitous, or attenuated; rather the 'defendant's conduct and connection with the forum State' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)). "[S]pecific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state.'" *RAR, Inc.*, 107 F.3d at 1278 (emphasis original) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cr. 1995)).

Accordingly, in a breach of contract case, only the "dealings *between the parties in regard to the disputed contract*" are relevant in determining whether there are sufficient minimum contacts to exercise specific jurisdiction. *RAR, Inc.*, 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)) (emphasis original). Courts look to the parties' "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Group Ltd.*, 536 F.3d at 761 (quoting *Burger King*, 741 U.S. at 479). Relevant factors may include: who initiated the transaction, where the contract was entered into, where the performance of the contract was to take place, and where the contract was negotiated. See *id.* at 762.

Here, the parties' primary contract dispute is whether licenses to third parties for digital music downloads qualify as licenses for "other types of use" under the Agreement. Plaintiffs also allege that Defendant breached the Agreement by not sharing third-party settlement proceeds and by deducting marketing costs from royalty payments. As Defendant points out, the Agreement has no substantial connection with Illinois. It was negotiated and executed in California and called for performance in California.

Plaintiffs contend that their claims nonetheless arise from Defendant's transaction of business in Illinois because: "[SMHI's] Bolingbrook facility distributes its music via compact disc and game hardware and software"; "SME operates interactive websites through which Illinois residents may download songs or purchase Survivor CDs"; and SME "is actively seeking a marketing representative who must be located in or near Chicago." Pls.' Br. 8 (citing Exhibits 9, 14, and 12). But these contacts with Illinois have little, if anything, to do with the parties' contract dispute; Defendant has established that "[t]he Bolingbrook facility does not manufacture or distribute products for [Defendant]," Khalil Decl. ¶ 18, and hiring a marketing representative in Illinois has no connection with the Agreement.

With respect to Defendant's "interactive website," Plaintiffs contend that *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010) supports specific jurisdiction. See Pls.' Resp. 9. There, the Seventh Circuit affirmed the exercise of specific jurisdiction over an out-of-state business that sold cigarettes to Illinois residents through its website. See 622 F.3d at 760. Plaintiffs contend that, similarly, Defendant's operation of a website that Illinois residents use to buy or download Survivor CDs gives rise to personal jurisdiction.

This argument misses the mark. Sales on Defendant's website are irrelevant to Plaintiffs' breach of contract claim, as the alleged breach concerns Defendant's "licenses to unaffiliated

providers of permanent digital music downloads," Compl. ¶ 23, *not* the direct sale of Survivor's music to consumers via Defendant's website. Thus, unlike in *Hemi*, where the claims were based on "the fact that when [defendant] sold cigarettes to Illinois customers, [the defendant] allegedly violated Illinois law," 622 F.3d at 759, here, the claims have nothing to do with purchases that Illinois residents may make on Defendant's website. Notably, there is no allegation that such purchases constitute breaches of the Agreement.

Accordingly, Plaintiffs have not met their burden of establishing a *prima facie* case for specific personal jurisdiction.

### D. Discovery Relating to Personal Jurisdiction

Plaintiffs assert alternatively that they should be permitted to take jurisdictional discovery if the Court finds that jurisdiction is unclear. However, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Courts generally grant jurisdictional discovery if the factual record is at least ambiguous or unclear on the issue. *Ticketreserve v. viagogo, Inc.*, 656 F. Supp. 2d. 775, 782 (N.D. Ill. 2009). Thus, jurisdictional discovery is not warranted where jurisdiction is based only upon unsupported assertions of personal jurisdictional or where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction. See *id.* at 782–83.

Here, Plaintiffs request that they be allowed to take discovery "concerning SME's sales, solicitation of sales, employment of Illinois residents, and other activities in Illinois." Pls.' Resp. 10. These proposed topics are not relevant to specific jurisdiction, as they do not pertain to the

"dealings *between the parties in regard to the disputed contract*," *RAR, Inc.*, 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp.*, 75 F.3d at 153) (emphasis original).

Although such discovery could be relevant to general jurisdiction, allowing discovery would be inappropriate because Plaintiffs have failed to establish a *prima facie* case of jurisdiction. See *Reimer Express World Corp.*, 230 F.3d at 946. As discussed *supra*, Plaintiffs' basis for general jurisdiction stems from Defendant's relatively minor contacts with Illinois—seeking to hire a marketing representative and maintaining websites where music may be purchased—as well as the affiliation between Defendant and SMHI, which engages in distribution activities in Illinois. The record is not ambiguous regarding the extent of such contacts, and both parties have had the opportunity to submit evidence on these topics. See *Purdue Research*, 338 F.3d at 783. Based on this evidence, Plaintiffs have failed to establish a colorable argument that Defendant is subject to general subject matter jurisdiction in Illinois under *Daimler AG* and *Goodyear*. Accordingly, jurisdictional discovery is not warranted.

**III.    Conclusion**

For the foregoing reasons, Defendant's motion to dismiss and for partial summary judgment [18] is granted in part, and Plaintiffs' complaint is dismissed for lack of personal jurisdiction.

Dated: October 28, 2014

_____
Robert M. Dow, Jr.
United States District Judge